Filed 2/26/21  P. v. Henry CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT HENRY,<br><br>    Defendant and Appellant. | A158921<br><br>(Solano County<br>Super. Ct. No. VC19726) |

Defendant Robert Henry appeals after the trial court denied his petition under Penal Code section 1170.95 to vacate his murder conviction and for resentencing.[1]  The court denied the petition after appointing counsel for Henry, receiving adversary briefing, and hearing oral argument, but without holding an evidentiary hearing.  We conclude the court correctly denied the petition without proceeding to an evidentiary hearing, because the verdict returned by the jury at Henry's trial irrefutably establishes that he is ineligible for relief under section 1170.95 as a matter of law.  We therefore affirm.[2]

---

[1] Undesignated statutory references are to the Penal Code.

[2] Henry has also filed in this court a petition for a writ of habeas corpus (No. A160596).  We will address that petition in a separate order.

1

# I. BACKGROUND

At Henry's trial in 1986, the jury convicted him of the first degree murder of Andre Johnson (§§ 187, subd. (a), 189). The jury found true a special-circumstance allegation that the murder was intentional and was committed for financial gain (§ 190.2, subd. (a)(1)). Finally, the jury found a principal in the crime was armed with a firearm (§ 12022, subd. (a)). The prosecution's theory at trial was that Henry hired Francis Lee Brewer to kill Cedric Turner (who Henry believed had participated in a robbery of Henry), and Brewer instead shot and killed Johnson, believing Johnson to be Turner. The prosecution argued Henry was guilty of aiding and abetting the murder of Johnson on a transferred intent theory.

The trial court sentenced Henry to life imprisonment without the possibility of parole. This court affirmed Henry's conviction in a 1988 unpublished opinion. (*People v. Henry* (Sept. 21, 1988, A035447) [nonpub. opn.].)

In October 2017, Henry filed in the trial court a petition for a writ of habeas corpus, arguing that newly discovered evidence established his actual innocence.[3] In the habeas matter, the court appointed counsel for Henry, issued an order to show cause as to two claims of actual innocence, and ultimately held an evidentiary hearing in December 2019, after which it denied relief.[4]

---

[3] For purposes of setting forth the background of the trial court habeas proceedings involving Henry, we take judicial notice of the record in a related appeal (*People v. Henry* (Sept. 18, 2020, A159396) [nonpub. opn.]). (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[4] Henry filed a notice of appeal purporting to challenge the trial court's order denying his habeas petition. This court dismissed that appeal because the challenged order was not appealable. (*People v. Henry*, *supra*, A159396.) As noted, Henry has also filed a habeas petition in this court (No. A160596), and that matter is pending.

With his habeas matter still pending in the trial court, in March 2019 Henry petitioned that court under section 1170.95 to vacate his murder conviction and for resentencing. The court appointed Henry's habeas counsel to represent him in connection with the section 1170.95 petition. In his petition and in supplemental filings by counsel, Henry argued the jury might have convicted him of murder on the basis of the natural and probable consequences doctrine or the felony-murder rule, and that he could not now be convicted of murder in light of the changes to sections 188 and 189 effected by Senate Bill Number 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which took effect on January 1, 2019.

Henry also filed a motion to amend his habeas petition to include allegations related to the issues presented in his section 1170.95 petition. The court denied that motion in July 2019, concluding the section 1170.95 petition provided an adequate remedy to address those issues.

Henry's counsel and the Solano County District Attorney's office submitted briefing pertaining to the section 1170.95 petition, and the court heard argument on the petition in August 2019. On September 16, 2019, the court issued a written order denying the petition without holding an evidentiary hearing. In its order, the court relied in part on the jury's true finding as to the financial-gain special circumstance at Henry's 1986 trial. The court noted that this finding "established that the jury believed beyond a reasonable doubt that the murder herein was intentional and that [Henry] acted with the specific intent to aid Mr. Brewer in its commission." The court concluded Henry is ineligible for relief under section 1170.95, because "the record available" to the court did not show that Henry "could not be convicted of first or second degree murder under the changes effective to Penal Code §§ 188 or 189 under the law effective January 1, 2019."

## II. DISCUSSION

### A. *Senate Bill 1437*

Senate Bill 1437 " 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § l, subd. (f).)" (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)

As outlined by our Supreme Court in *Gentile*, Senate Bill 1437 furthered that purpose by adding three provisions to the Penal Code: "First, to amend the felony-murder rule, Senate Bill 1437 added section 189, subdivision (e): 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' . . . .

"Second, to amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) . . . : 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.'

4

"Third, Senate Bill 1437 added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above." (*Gentile, supra*, 10 Cal.5th at pp. 842–843.)

B. *Section 1170.95*

Subdivision (a) of section 1170.95 specifies the conditions that provide a basis for relief under the statute: "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."

If a petition containing certain required information is filed (see § 1170.95, subd. (b)), the trial court must then determine whether a petitioner has made a sufficient prima facie showing to proceed to an evidentiary hearing. Subdivision (c) of section 1170.95 provides: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve

5

a reply within 30 days after the prosecutor['s] response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

If the court issues an order to show cause, the court must hold an evidentiary hearing to determine whether the petitioner is entitled to relief. (§ 1170.95, subd. (d).) At that hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Id.*, subd. (d)(3).)

## C. *Henry Did Not Make a Prima Facie Showing That He Is Entitled to Relief Under Section 1170.95*

### 1. The Trial Court's Ruling

After appointing counsel for Henry and considering briefing and oral argument from the parties as outlined in section 1170.95, subdivision (c), the trial court in effect concluded Henry had not made a prima facie showing that he was entitled to relief. Specifically, as to the three conditions for relief set forth in section 1170.95, subdivision (a), the court found Henry had established the first two conditions—he was charged with murder, allowing the prosecution to proceed on a theory of felony murder or murder under the natural and probable consequences doctrine, and he was convicted of murder (§ 1170.95, subd. (a)(1)–(2)). But the court concluded Henry had not made a sufficient showing as to the third condition for relief, i.e., that he could not be convicted of murder under the changes to sections 188 and 189 that took effect January 1, 2019 (§ 1170.95, subd. (a)(3)). The court therefore denied

6

Henry's petition without issuing an order to show cause or holding an evidentiary hearing under section 1170.95, subdivision (d).

## 2. The Jury's Special-Circumstance Finding Establishes Henry Is Ineligible for Relief

Henry contends the trial court erred by denying his petition at the prima facie review stage, and that he made a sufficient showing to require the court to issue an order to show cause and hold an evidentiary hearing. We disagree, because we conclude the record of Henry's conviction (specifically, the jury's verdict) establishes he is ineligible for relief.

A petitioner is ineligible for relief under section 1170.95 as a matter of law if the petitioner "was convicted on a ground that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 330, review granted Mar. 18, 2020, S260493 (*Verdugo*).)[5] The record shows the jury at Henry's trial adopted a theory of murder liability that remains valid under section 188 as amended by Senate Bill 1437—the theory that Henry, with the intent to kill, directly aided and abetted the commission of first degree murder.

---

[5] In *Verdugo*, the appellate court concluded that this determination may be made during the first of two prima facie reviews by the trial court under section 1170.95, subdivision (c), and that the first such review (which may be dispositive) may be conducted before the court appoints counsel for the petitioner. (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 328–329, 332–333, review granted.) There is disagreement among the Courts of Appeal as to these procedural points. (See *People v. Cooper* (2020) 54 Cal.App.5th 106, 112–113, 115, 118, 123, review granted Nov. 10, 2020, S264684 [disagreeing with *Verdugo*; holding § 1170.95, subd. (c) provides for just one prima facie review and requires the appointment of counsel upon the filing of a facially sufficient petition that requests appointment of counsel].) No issue pertaining to this split of authority is raised by the present appeal, as the trial court here appointed counsel for Henry and received adversary briefing before issuing its ruling.

As noted, Senate Bill 1437 amended section 188 by adding subdivision (a)(3), which specifies that: "Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." As the Supreme Court explained in *Gentile*, this amendment changed the law of aiding and abetting liability as it pertains to murder, but it leaves intact the theory of direct aiding and abetting as a basis for a murder conviction.

The *Gentile* court stated: "Our law recognizes two forms of liability for aiders and abettors. [Citation.] First, under direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' [Citation.] [¶] Second, under the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted (i.e., the nontarget offense)." (*Gentile, supra*, 10 Cal.5th at p. 843.)

Following the enactment of Senate Bill 1437, natural and probable consequences liability cannot extend to first degree or second degree murder. (*Gentile, supra*, 10 Cal.5th at pp. 838–839.) But "Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*Id.* at p. 848.)

At Henry's trial, the trial court instructed the jury on aiding and abetting liability, explaining principles of both direct aiding and abetting and the natural and probable consequences doctrine (although it did not instruct

8

on a specific target offense that allegedly led to the nontarget offense of murder). The court instructed in part: "One who aids and abets is not only guilty of the particular crime that, to his knowledge, his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly or intentionally aided or encouraged. [¶] A person aids and abets the commission of a crime when he or she, one, with knowledge of the unlawful purpose of the perpetrator and, two, with the intent or purpose of committing, encouraging or facilitating the commission of the offense, by act or advice, aids, promotes, encourages or instigates the commission of the crime."

Similarly, the prosecutor argued that Henry aided and abetted Brewer's murder of Johnson. In making this argument, the prosecutor referred to both direct aiding and abetting and the natural and probable consequences doctrine. As to direct aiding and abetting, the prosecutor stated: "[I]t's our particular theory that the aider and abettor here was the Defendant, Mr. Henry, through his aiding, promoting, encouraging or instigating Mr. Brewer to perform the act Mr. Brewer did." As to natural and probable consequences, the prosecutor did not articulate a specific target crime that Henry aided and abetted and that resulted in the nontarget crime of murder. But the prosecutor did refer to the natural and probable consequences doctrine as a basis for murder liability in light of conflicting evidence that was before the jury as to the agreement between Henry and Brewer.

The prosecutor stated: "When you're thinking about this principal, aider and abettor theory, the aider and abettor, he is guilty of the particular crime that he knew his confederate was contemplating doing, but he's also liable for the natural, reasonable or probable consequences of that act.

9

[¶] Now, here there's been conflicting testimony about whether it was going to be a shooting, whether it was going to be a beating, whether it was going to be a killing. That's what you're here to decide, ladies and gentlemen; from all the evidence, you have to come to those conclusions. [¶] I submit to you, if you find that Mr. Henry only thought there was going to be a shooting, well, again, that doesn't solve the problem for him. It doesn't mean that he's not guilty; because under the principal theory, if he's liable for the natural and reasonable or probable consequences of that act, well, what's the natural, reasonable, probable consequence of shooting someone? That that someone might die, which is exactly what happened here."

In addition to the aiding and abetting theories, Henry contends the instructions and arguments at trial also allowed the jury to consider felony murder as a possible theory of murder liability, and he argues the trial court was incorrect to conclude he was not prosecuted on a felony-murder theory. We are skeptical that the jury would have understood the felony-murder rule as a separate avenue to reaching a verdict of first degree murder. No separate felony-murder instruction was given. There was no allegation that Johnson's murder occurred during the perpetration of one of the felonies listed in section 189, subdivision (a) (such as a robbery or a burglary), so as to support a conviction of first degree felony murder.

Henry argues, however, that the court's general instructions on murder allowed the jury to convict him of first degree murder on a felony-murder theory because (1) the instructions defined murder as an unlawful killing that is committed with malice aforethought or that occurs during the commission of a felony that is inherently dangerous to human life (thus incorporating the *second degree* felony-murder doctrine as an alternative to malice murder (see *People v. Chun* (2009) 45 Cal.4th 1172, 1182 ["Second degree felony murder is 'an unlawful killing in the course of the commission

10

of a felony that is inherently dangerous to human life but is not included among the felonies enumerated in section 189' "])), and (2) the instructions did not specify that a killing during the commission of such a felony is second degree, rather than first degree, murder. As Henry notes, the prosecutor also made a brief reference to this definition of murder in closing argument, although he then focused on the elements of malice and premeditation and did not develop any argument that Henry was guilty of murder because Johnson was killed during the commission of an inherently dangerous felony.

As noted, we do not find it likely that the jury gleaned from these brief references a path to a first degree murder verdict that was independent of the aiding and abetting theory on which the prosecution focused. But we need not resolve this issue. Even if we assume the jury had available to it multiple theories of murder liability (direct aiding and abetting, the natural and probable consequences doctrine, and even perhaps an undeveloped felony-murder theory), the jury's finding on the financial-gain special circumstance is dispositive here. That finding establishes the jury found that Henry, with the intent to kill, directly aided and abetted the commission of first degree murder.

Section 190.2 sets forth special circumstances that subject a person convicted of first degree murder to a punishment of death or life imprisonment without the possibility of parole. The special circumstance in section 190.2, subdivision (a)(1) applies when "[t]he murder was intentional and carried out for financial gain." (§ 190.2, subd. (a)(1); see *People v. Freeman* (1987) 193 Cal.App.3d 337, 339 [construing 1978 version of § 190.2, which included identical language in subd. (a)(1)].)

When the defendant is not the actual killer, the financial-gain special circumstance applies if the defendant, "with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the

commission of murder in the first degree." (§ 190.2, subd. (c); *People v. Fayed* (2020) 9 Cal.5th 147, 201–202.) The 1978 version of the statute that applied at the time of the crime and the trial in this case included similar language. (*People v. Freeman, supra,* 193 Cal.App.3d at p. 339 [quoting former subd. (b) of § 190.2, which provided for application of the special circumstance to a defendant who was not the actual killer but was " 'found guilty of intentionally aiding . . . counseling . . . inducing, soliciting . . . or assisting any actor in the commission of murder in the first degree' "]; see *People v. Padilla* (1995) 11 Cal.4th 891, 933 ["[I]n this case, before defendant could be found subject to the financial gain special circumstance as an accomplice, the jury was required to find that defendant had the intent to kill"].)[6]

The jury's true finding on the financial-gain special circumstance thus includes findings that Henry, with the intent to kill (i.e., express malice (§ 188, subd. (a)(1))), directly aided and abetted the commission of first degree murder. (See *People v. Bentley* (2020) 55 Cal.App.5th 150, 154, review granted Dec. 16, 2020, S265455 [jury's true finding, as to shooter's accomplice, on special circumstance for shooting from motor vehicle under § 190.2, subd. (a)(21), encompassed finding that accomplice "aided and abetted the shooter 'with the intent to kill' " (citing § 190.2, subd. (c))].) In short, the jury adopted a theory of murder liability—direct aiding and abetting—that is still valid after Senate Bill 1437. (§ 188, subd. (a)(3); *Gentile, supra*, 10 Cal.5th at p. 848.) Accordingly, Henry is ineligible for

---

[6] Not at issue in this case is the different standard applicable when the special circumstance involved is the felony-murder special circumstance in section 190.2, subdivision (a)(17). (See § 190.2, subd. (d) [imposing special-circumstance liability under § 190.2, subd. (a)(17) to a defendant who is not the actual killer if the defendant, "with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of" the underlying felony].)

relief under section 1170.95 as a matter of law. (*Verdugo, supra,* 44 Cal.App.5th at p. 330, review granted.)

### 3. The Jury Instruction on the Special Circumstance Was Not Defective

In his appellate briefing, Henry states he "agrees that a financial gain special circumstance finding typically makes a petitioner ineligible for relief under section 1170.95 because it normally requires the jury to find that the defendant had the intent to kill." Henry contends, however, that the special-circumstance finding here is not dispositive, because the instructions to the jury about the special circumstance were ambiguous and did not require the jury to find he personally had the intent to kill. We disagree.

At Henry's trial, the court's instruction on the financial-gain special circumstance provided in part:

"If Defendant, Robert Henry, was an aider and abettor but not the actual killer, *it must be proved beyond a reasonable doubt that he intended to aid in the killing of a human being* before you are permitted to find the alleged special circumstance of that first degree murder to be true as to Defendant, Robert Henry. [¶] . . . [¶] To find that the special circumstance referred to in these instructions as murder for financial gain is true, each of the following facts must be proved: [¶] One, that the murder was intentional; and [¶] Two, that it was carried out for financial gain. [¶] To find that the special circumstance is true, the Defendant need not be the individual who actually committed the murder. [¶] If the Defendant intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted any actor *in the commission of murder in the first degree*, which murder was intentional and which was carried out for financial gain, you should find the special circumstance to be true." (Italics added.)

The court thus instructed the jury that (1) to find the special circumstance true as to a defendant who was not the actual killer (the sole

13

theory as to Henry, who the prosecution never contended was the actual killer), the jury must find he had the intent to kill, and (2) the jury had to find Henry intentionally aided and abetted the commission of first degree murder. In the middle of the instruction, the court set forth the elements of the particular special circumstance at issue—the financial-gain special circumstance—including the requirement that the murder was intentional. (§ 190.2, subd. (a)(1).)

Henry contends the jury might have focused solely on the portion of the instruction stating that to find the special circumstance true, it had to find two "facts" had been proved, including that "the murder was intentional." Henry argues the jury could have found this element was satisfied by proof that Brewer had the intent to kill, without finding that Henry did. In Henry's view, the jury thus could have decided he was guilty of first degree murder on a theory other than direct aiding and abetting (such as the natural and probable consequences doctrine), and then found the financial-gain special circumstance true, all without finding Henry had the intent to kill.

We reject this contention. In assessing a claim that an instruction misled the jury, "[w]e must consider the instructions together as a whole, to determine whether it is reasonably likely a jury would interpret an instruction in a particular way, because we presume jurors understand and correlate all of the instructions." (*People v. Burton* (2018) 29 Cal.App.5th 917, 925.) In our view, it is not reasonably likely the jury interpreted the special-circumstance instruction in the manner Henry suggests. As noted, the same instruction expressly stated that, to find the special circumstance true, the jury had to find that Henry himself "intended to aid in the killing of a human being" and "intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted any actor in the commission of murder in the first degree." We do not think it reasonably likely the jury

14

ignored those portions of the instruction, focused solely on the part identified by Henry, and construed it to mean there was no need to find Henry had the intent to kill.[7]

Henry contends that, at the prima facie review stage under section 1170.95, the record is to be construed in his favor and does not "conclusively refute" his claim that he was convicted on the basis of the natural and probable consequences doctrine or the felony-murder rule despite the special-circumstance finding. (See *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 ["when assessing the prima facie showing, the trial court should assume all facts stated in the section 1170.95 petition are true"]; *id.* at p. 968; but see *People v. Garcia* (2020) 57 Cal.App.5th 100, 116, review granted Feb. 10, 2021, S265692 [disagreeing with *Drayton* as to standard for prima facie sufficiency].) We are not persuaded that an obligation to read the factual record in a petitioner's favor changes the nature of this court's task in determining the legal effect of express jury findings and whether they establish that the petitioner is ineligible for relief as a matter of law. The jury's true finding on the special-circumstance allegation, based on proper instructions, is dispositive here and establishes Henry is ineligible for section 1170.95 relief as a matter of law. "The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect

---

[7] This court rejected a similar argument in Henry's direct appeal, concluding the special-circumstance instruction required the jury to find Henry had the intent to kill. (*People v. Henry, supra,* A035447.) We noted there that "the special circumstance requirement that the jury find defendant 'intended to aid in the killing of a human being' could not be clearer on the issue of appellant's intent to kill." (*Ibid.*) And, also relevant to Henry's present contentions, we noted on direct appeal that the jury's true finding on the special circumstance, a finding that was based on proper instructions, established that the jury's verdict was not based on the natural and probable consequences doctrine. (*Ibid.*)

to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*People v. Allison* (2020) 55 Cal.App.5th 449, 461.)

Because Henry is ineligible for relief, we need not address his arguments to the effect that certain aspects of the trial court's reasoning were unsound. For example, Henry asserts the trial court (1) incorrectly concluded that no felony-murder theory was presented at trial, and (2) improperly relied on this court's opinion on direct appeal to determine the facts underlying Henry's conviction and/or to ascertain which theory of murder liability was the basis for his conviction. Because the jury's special-circumstance finding shows it adopted a valid direct aiding and abetting theory, it is irrelevant which other theories were available for the jury's consideration. Also irrelevant are any alleged defects in the trial court's assessment, based on evidence or arguments presented at trial, as to which theory was likely to have been adopted by the jury.

Finally, Henry faults the trial court for not considering "any of the new evidence" he submitted in support of his section 1170.95 petition, which he contends supported his claims of innocence and "would have created a reasonable doubt as to the prosecution's ability to again convict [him] of murder." There was no error. Because the jury's verdict establishes that Henry is ineligible for relief as a matter of law, he could not and did not make the prima facie showing under subdivision (c) of section 1170.95 that is a prerequisite to the issuance of an order to show cause and the holding of an evidentiary hearing at which the prosecution would have to prove ineligibility beyond a reasonable doubt. (§ 1170.95, subds. (c)–(d).) At the prima facie review stage, there was no need for the court to consider the evidence or factual arguments that Henry might have sought to introduce at such a

hearing. (§ 1170.95, subd. (d)(3) [at evidentiary hearing, parties may introduce new evidence].)

For the same reason, the recent decision in *People v. Rodriguez* (2020) 58 Cal.App.5th 227, cited by Henry in a supplemental filing, is inapposite. That case focuses on the standards and procedures applicable at an evidentiary hearing held under section 1170.95, subdivision (d), *after* the petitioner has made a prima facie showing of eligibility and the trial court has issued an order to show cause. (*Rodriguez,* at pp. 241–242 ["*once a prima facie case of eligibility has been made and an order to show cause issued,*" the prosecution has the burden under § 1170.95, subd. (d)(3) to prove the petitioner's ineligibility beyond a reasonable doubt (italics added)]; see *id.* at pp. 230, 234.) Because Henry did not make a prima facie showing here, no burden arose to prove him ineligible beyond a reasonable doubt.

## III.  DISPOSITION

The order denying Henry's section 1170.95 petition is affirmed.

STREETER, Acting P. J.

WE CONCUR:

TUCHER, J.
BROWN, J.

17